Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 98 C 3432 | DATE | June 21, 2004 |
| CASE TITLE | United States ex rel. Curtis Johnson v. Jerry Sternes | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing [held/continued to] [set for/re-set for] on _____ set for 6-30-04 at 9:30 a.m.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] . The state court proceedings having been completed, this Court orders that the stay in these proceedings be lifted. The Court sets a status date of Wednesday, June 30, 2004, at 9:30 a.m. at which time the Court will set a date for an evidentiary hearing on the issue of whether petitioner Curtis Johnson's trial counsel was ineffective when he failed to interview or call Danny Turner as a witness at trial. The remainder of Johnson's habeas claims are DENIED. Enter memorandum opinion and order.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | Document Number |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | JUN 2 3 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | GMA | 45 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| JHC | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

## ORDER

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>ex rel. CURTIS JOHNSON,<br>Petitioner, | )<br>)<br>)<br>) | |
| v. | ) | 98 C 3432 |
| JERRY L. STERNES,[1]<br>Respondent. | )<br>)<br>) | Judge William J. Hibbler |

DOCKETED
JUN 2 3 2004

## MEMORANDUM AND ORDER

Curtis Johnson was convicted by an Illinois jury of one count of murder and three counts of armed robbery. After Johnson's challenges to his conviction and sentence were denied on direct appeal and post-conviction proceedings, he filed a *habeas corpus* petition pursuant to 28 U.S.C. § 2254, asserting seven grounds for relief. For the following reasons, the Court will set an evidentiary hearing for one of Johnson's habeas claims and DENY the remainder of Johnson's petition.

## I. Background

### A. Facts

On September 14, 1984, Johnson was arrested for the armed robbery of Dan Williams, Wilber Shipp, and Robert Hampton, and the murder of Dan Williams. Shipp and Hampton testified that shortly after 9:30 a.m. on September 3, 1984, they were helping Shipp's stepson, Danny Turner, and their friend, Dan Williams, pull Hampton's van out of his garage located at 7009 South Lowe

---

[1] Johnson's petition named Odie Washington, the former warden of the Dixon Correctional Center, as the respondent. The current warden of the Dixon Correctional Center, where Johnson remains incarcerated, is Jerry L. Sternes. Accordingly, Jerry L. Sternes is hereby substituted as the respondent. *See* Fed. R. Civ. P. 25 (d)(1); Rule 2 (a) of the Rules Governing *Habeas Corpus* 28 U.S.C. § 2254 Cases.

1

45

in Chicago in order to make more room for Williams' vehicle. Shipp and Hampton testified that while they worked to pull out the van, Johnson entered the garage holding a .38 Smith & Wesson blue steel revolver and announced a robbery. Johnson ordered the men to lie on the floor and empty their pockets. Hampton and Shipp testified that they complied and placed their money on the floor in the garage in front of them. Williams, however, threw his change on the floor. Angered by this, Johnson demanded Williams remove his wallet. Williams took his wallet out of his pants and threw it toward Johnson. Johnson said: "Son of a bitch, you thinking I'm playing with you, don't you. I'm not playing with you. You get up and walk out that back door." Shipp and Hampton testified that Johnson walked with Williams to the rear door of the garage and shot him once in the back of the head, killing him instantly.

Hampton estimated that the robbery took only a few minutes, while Shipp thought they were on the floor fifteen to twenty minutes. Both testified that they saw Johnson while they were standing in the garage and that they continued to look at him and his gun after he ordered them to lie on the floor. The garage was illuminated by natural and artificial light. Hampton and Shipp gave a detailed description of the offender and his clothing to the police. Approximately ten days after the incident, Hampton and Shipp selected Johnson's photograph from an array of photographs and identified Johnson in several separate lineups. Turner, who was not able to make a positive identification of Johnson in two separate lineups, did not testify at trial.

Upon his arrest, Johnson denied that he was the offender. He told police that he left his apartment at 6632 South Lowe between 9 and 10 a.m. on September 3, 1984, and walked to a home on 65th Street to cut hair. His customer was not home, so Johnson went to an address on South Halsted. He then cut hair later in the afternoon until 2 or 3 p.m. After he was identified in the

2

lineups, Johnson gave another statement to police and an Assistant State's Attorney in which he said that he was at home with his mother and her friend, Willie Williams, until 11 a.m.

On September 14, 1984, police searched the apartment of Johnson's common law wife, Ella, at 2309 East 79th Street, between 10 and 11 p.m. Police then searched Johnson's apartment after Johnson spoke with his sister, Shirley Rogers, from the police station. No evidence connecting Johnson with the crimes was found at either address. Johnson presented an alibi defense that was corroborated by his mother and Willie Williams. Another witness, Willie Woodridge, testified regarding Johnson's whereabouts several hours after the shooting.

### B.     Procedural History

At Johnson's trial, he was convicted of one count of murder and three counts of armed robbery. The jury sentenced him to serve concurrent terms of sixty years for the murder and thirty years for armed robbery. On February 5, 1986, Johnson filed his direct appeal.

In his direct appeal, Johnson raised four issues: (1) the matter should be remanded for a *Batson* hearing because he was denied his Sixth Amendment right to a jury trial drawn from a representative cross-section of the community by the prosecutor's use of peremptory challenges; (2) he was not proved guilty beyond a reasonable doubt; (3) the prosecutor made improper and inflammatory comments in final arguments; and (4) his sentence was excessive. On August 21, 1987, the Illinois Appellate Court affirmed Johnson's convictions and sentence, but remanded the case to the circuit court with instructions to conduct an evidentiary hearing in accordance with *Batson v. Kentucky*, 476 U.S. 79 (1986). The court found that the State used its peremptory challenges to excuse eight black people from the jury and only accepted two black jurors, and, thus, the court ordered that Johnson be allowed to return to the trial court and attempt to establish a *prima*

3

*facie* case of discrimination in every instance in which the *Batson* issue was viable.[2] Johnson filed a petition for rehearing on the other issues, but his petition was denied on September 17, 1987. His petition for leave to appeal to the Supreme Court was also denied.

On remand, Johnson's *Batson* claims were denied. The circuit court found that Johnson failed to establish a *prima facie* case of purposeful discrimination in the prosecutor's use of peremptory challenges, and Johnson thus failed to substantiate his claim of unconstitutional discrimination in the exercise of peremptory challenges. The Illinois Appellate Court affirmed the circuit court's decision in a March 26, 1993 order. On May 11, 1993, the Illinois Supreme Court denied Johnson's petition for leave to appeal.

Johnson filed a *pro se* petition for post-conviction relief on December 10, 1991, and on June 1, 1994, he filed a supplemental post-conviction petition through counsel, asserting the following issues: (1) denial of his Sixth Amendment right to effective assistance of trial counsel because counsel failed to interview and call Danny Turner as a witness; (2) denial of his right to an appeal on his *Batson* remand when the appellate court misapplied existing law; (3) improper prosecutorial conduct leading to denial of due process of law and a fair trial; (4) ineffective assistance of appellate counsel on Johnson's direct appeal for failing to raise the issue of the prosecutor's cumulative misconduct; and (5) ineffective assistance of appellate counsel on *Batson* remand. The public defender's office also supplemented Johnson's petition with an affidavit from Turner and from Johnson's trial counsel. On June 27, 1994, the circuit court dismissed Johnson's post-conviction petition, and on January 3, 1997, the appellate court affirmed the dismissal. The appellate court

---

[2]*Batson* does not require complete exclusion of a racial group to prove discrimination. *See, e.g., People v. Seals*, 505 N.E.2d 1107, 1111 (Ill. App. Ct. 1987) (requiring *Batson* hearing where prosecutor used six of ten peremptory challenges against blacks, even though one black served on the jury).

4

reasoned that Johnson's ineffective assistance of trial counsel claim was barred by the doctrine of *res judicata*, and that the affidavits of trial counsel and Danny Turner did not constitute new evidence entitling Johnson to a new trial. On June 27, 1994, Johnson requested leave to appeal to the Illinois Supreme Court on *Batson* grounds and ineffective assistance of counsel grounds, and his petition was denied on June 4, 1997.

On June 3, 1998, Johnson petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In the instant petition, Johnson raises the following issues: (1) he was denied his Sixth Amendment right to effective assistance of trial counsel; (2) ineffective assistance of appellate counsel on *Batson* remand; (3) ineffective assistance of original appellate counsel; (4) the trial court erred in summarily dismissing his post-conviction proceeding; (5) he was not proved guilty beyond a reasonable doubt; (6) denial of his right to a fair trial as a result of the prosecutor's closing arguments; and (7) his sixty-year extended term sentence was excessive. On June 24, 1999, Judge Robert Gettleman of the Northern District of Illinois issued an order appointing counsel for Johnson to address the issue of whether the appellate court ever considered Johnson's ineffective assistance of trial counsel claim on the merits, and if it did, whether it analyzed the claim properly and whether the ruling would be subject to habeas review under the standards of 28 U.S.C. 2254(d). The following month the case was transferred to Judge William Hibbler, and on March 29, 2000, Johnson's appointed counsel, Scott Frankel, filed a memorandum in support of Johnson's habeas petition, and the State filed a brief in response.

## II. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, a petitioner is not entitled to a writ of *habeas corpus* unless the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States

Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). In *Williams*, the Supreme Court held that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Id.* at 405.

With respect to the "unreasonable application" prong under § 2254(d)(1), a *habeas* petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id.* at 407. A state court's application of Supreme Court precedent is unreasonable if the court's decision was "objectively" unreasonable. *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (unreasonable application more than incorrect or erroneous). In order to be considered unreasonable under this standard, a state court's decision must lie "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002). *See also Searcy v. Jaimet*, 332 F.3d 1081, 1089 (7th Cir. 2003) (decision need not be well reasoned or fully reasoned and is reasonable if it is one of several equally plausible outcomes); *Schultz v. Page*, 313 F.3d 1010, 1015 (7th Cir. 2002) (reasonable state court decision must be minimally consistent with facts and circumstances of the case).

### III. Discussion

#### A. Exhaustion and Procedural Default

Before this Court may reach the merits of Johnson's federal *habeas* claims, it must consider whether he has exhausted his state remedies and avoided procedural default under Illinois law. *See Mahaffey v. Schomig*, 294 F.3d 907, 914-15 (7th Cir. 2002). To exhaust state court remedies, a petitioner must give the state courts an opportunity to act on each of his claims before he presents them to a federal court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). State remedies are

exhausted when they are presented to the state's highest court for a ruling on the merits or when no means of pursuing review remain available. *Boerckel*, 526 U.S. at 844-45, 847; 28 U.S.C. § 2254(c).

Procedural default occurs when a petitioner fails to comply with state procedural rules. *Mahaffey*, 294 F.3d at 915. This occurs when the petitioner fails to pursue all appeals required by state law, *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991), or fails to fully and fairly present his federal claims to the state court, *Boerckel*, 526 U.S. at 844. It also occurs when the state court did not address a federal claim because the petitioner failed to satisfy an independent and adequate state procedural requirement. *Stewart v. Smith*, 536 U.S. 856 (2002). If an Illinois appellate court finds that a claim is waived, that holding constitutes an independent and adequate state ground. *Rodriquez v. McAdory*, 318 F.3d 733, 735 (7th Cir. 2003).

Johnson does not appear to have procedurally defaulted on any of his claims. Except for his claims that appellate counsel was ineffective, he raised each of his claims at each level in state court. Although Johnson did not raise his ineffective assistance of counsel claims on direct appeal, claims of ineffective assistance of counsel are properly adjudicated in post-conviction proceedings. *Massaro v. U.S.*, 538 U.S. 500, 504 (2003). Johnson properly raised this claim in his petition for post-conviction relief, appealed it to the state appellate court, and then included it in his petition for leave to appeal to the Illinois Supreme Court.

**B.     Noncognizable Claim: Failure to Prove Guilt Beyond a Reasonable Doubt**

Johnson also asserts that in light of his unimpeached alibi defense that he was with his mother and her boyfriend at the time of the murder, the uncorroborated identification testimony by Shipp and Hampton at the heart of the State's case could not prove Johnson guilty of murder and armed robbery beyond a reasonable doubt. This claim does not present a constitutional issue for habeas review. The purpose of habeas review is not to re-weigh the evidence. Rather, Johnson must

7

demonstrate that the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1). Therefore, this claim is noncognizable.[3]

## C. The Merits

### 1. Excessive Sentence

Johnson argues that his sixty-year extended term sentence for murder and his thirty-year sentence for armed robbery are improper considering the nature of the offenses, his lack of criminal background, his social background, and the surrounding circumstances of the case. Generally, if the sentence imposed by the trial court falls within the range established under Illinois law, the severity of the sentence is not grounds for habeas relief in federal court. *Henry v. Page*, 223 F.3d 483, 482 (7th Cir. 2000). At the time of Johnson's sentence, the maximum term for first degree murder was forty years. IL ST CH 38 ¶ 1005-8-1.[4] The trial court, however, found Johnson's actions to be "exceptionally brutal and heinous," and the statute allowed the court to sentence a defendant to an extended term of forty to eighty years where behavior is brutal and heinous or indicative of wanton cruelty. *Id*. Although Johnson had no criminal record, the court found that the seriousness of the crime was the most important factor in determining the sentence. A man was shot in the back of the head for not immediately complying with the defendant's order to hand over his money. The

---

[3]Furthermore, on habeas review, "the evidence must be considered in the light most favorable to the government, and draw all reasonable inferences in its favor." *United States v. Burrell*, 963 F.2d 976, 993 (7th Cir. 1992). In this case, there was enough evidence to convict Johnson, including two eyewitness identifications, opportunity to discard any physical evidence of the crimes, and the bias of the witnesses that corroborated Johnson's alibi.

[4]The maximum term for first degree murder has since been increased to sixty years. *See* 730 ILCS 5/5-8-1 (a)(1) (mandating range of twenty to sixty years for first degree murder).

8

decision to extend Johnson's term under the circumstances of this case and according to Illinois law allowing such extension does not present a constitutional issue meriting habeas review.

### 2. Ineffective Assistance of Trial Counsel

Johnson alleges that he was denied effective assistance of trial counsel because his attorney at trial failed to: (1) interview and call Danny Turner as a witness; (2) call Johnson's sister, Shirley Ann Rogers, as a witness; (3) question Johnson on redirect examination regarding his phone call from the police station; (4) object when the prosecutor argued facts not in evidence; (5) request the trial judge instruct the jury to disregard the prosecutor's improper insinuation concerning the phone conversation; and (6) request a mistrial because of that insinuation.

In *Williams*, the Supreme Court identified the *Strickland* test as the proper standard of review for ineffective assistance of counsel. *Williams*, 529 U.S. at 390. To establish ineffective assistance of counsel, a defendant must show both that: (1) his attorney's performance was ineffective; and (2) he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Under the first prong, ineffective performance exists when an attorney's actions fall below an objective standard of reasonableness. *Id.* at 688. The reviewing court must determine if the attorney's actions were within the range of professional competence demanded of attorneys in criminal cases, *id.* at 687, or part of sound trial strategy. *Id.* at 689. Under the second prong, a defendant's case is prejudiced when there is a reasonable probability that if not for the attorney's ineffective performance, the result in the case would be different. *Id.* at 694.

#### a. Failure to Interview and Call Danny Turner as a Witness

On direct appeal, the Illinois Appellate Court held that Johnson's contention that his Sixth Amendment rights were violated by his trial counsel's failure to call Danny Turner as a witness is "wholly speculative and based on matters outside the record that cannot be considered on direct

9

appeal." In addition, the court held that Turner's expected testimony that he was closest to the perpetrator of the crime but could not identify him in the lineups is "not of conclusive character which would be likely to change the result at retrial."

On December 10, 1991, Johnson filed a *pro se* post-conviction petition restating this claim, and on June 1, 1994, the Cook County Public Defender's Office supplemented Johnson's *pro se* submissions with an affidavit from Turner and trial counsel concerning Turner's potential testimony and trial counsel's failure to interview Turner. Turner's affidavit states that although he got a good look at the offender on September 3, 1984, he did not see the offender in any of the lineups he viewed. Trial counsel's affidavit states that he would have liked to interview Turner but does not explain *why* he failed to do so. The trial court dismissed Johnson's post-conviction petition, and the Illinois Appellate Court affirmed the dismissal, holding that:

> defendant's claim that trial counsel provided ineffective assistance at trial is barred by the doctrine of *res judicata* as this claim was previously presented and rejected by this court on direct appeal. Moreover, we do not find that the affidavits of Turner and trial counsel, which were attached to defendant's post-conviction petition, constitute new evidence which entitle defendant to a new trial as they contain no conclusive evidence of defendant's innocence.

*Res judicata* is a merit-based determination that is not a bar to further consideration in a federal habeas action. *Page v. Frank*, 343 F.3d 901, 907 (7th Cir. 2003). "Federal review is precluded only by procedural forfeitures, not by *res judicata* concerns." *Id.* In addition, the appellate court considered the merits of the issue and found that the affidavits contained no new evidence of Johnson's innocence. As such, the Court must determine whether the state courts' denial of Johnson's ineffective assistance of counsel claim resulted in a decision contrary to clearly established federal law as determined by the Supreme Court of the United States or an unreasonable application of the controlling law to the facts of the case.

10

The Court finds that it cannot yet make the decision as to whether Johnson's trial counsel was ineffective under *Strickland*, 466 U.S. at 690. The record before the Court does not show why Johnson's trial counsel failed to interview Turner or call him at trial, and it is unclear whether Turner was unable to identify the offender in the lineups he viewed or whether he was confident the offender was not present in the lineups. The state courts' denial of Johnson's ineffective assistance of counsel claim may have been based on an unreasonable application of the law to the facts because the only evidence linking Johnson to the crime was the eyewitness identification by two of the three eyewitnesses to the crime. The police could find no physical evidence linking Johnson to the crime, although the prosecution argued that Johnson had an opportunity to discard physical evidence of the crimes. The third eyewitness, Turner, did not identify Johnson, and he was the only one who did not testify at trial.

Depending on Turner's credibility and reliability as a witness and the exact testimony he would give, there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. *See also People v. Davis*, 203 Ill. App. 3d 129, 139 (1990). In *U.S. ex rel. Hampton v. Leibach*, 347 F.3d 219, 247-48 (7th Cir. 2003), the Seventh Circuit affirmed the district court finding that the trial counsel's failure to conduct a reasonable pretrial investigation by contacting the occurrence witnesses whose names had been give to him and by failing to make any effort of his own to locate and contact other eyewitnesses constituted ineffective assistance of counsel. In *Hampton*, as in the instant case, eyewitness testimony was the linchpin of the State's case against petitioner, and it was not reasonable for counsel to believe that it was unnecessary to identify and interview potentially exculpatory eyewitnesses to the events underlying the charges against the petitioner. *Id.*

11

The State argues, however, that Johnson is not entitled to an evidentiary hearing because an evidentiary hearing may only be held if the factual predicate of the petitioner's claim "could not have been previously discovered through the exercise of due diligence; and the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254 (e). Contrary to the State's claims, a sufficient factual predicate was not developed in the state courts, through no fault of Johnson. *See Hampton*, 347 F.3d at 240 (petitioner's failure to develop the factual basis of his habeas claim in state court will bar expansion of the record in federal court only if this failure was due to a lack of diligence or some greater fault attributable to the petitioner himself).

Although in some cases consideration of affidavits may be sufficient, in this case, the credibility and reliability of Turner as a witness is paramount, and the state courts' reading of his affidavit was not sufficient to establish a factual predicate to Johnson's claim that his trial counsel was ineffective by failing to call Turner as a witness. *See Hampton*, 347 F.3d at 244-45 (district court could not assess what impact the exculpatory eyewitnesses likely would have had upon trial without hearing their testimony); *Bruce v. United States*, 256 F.3d 592, 598-99 (7th Cir. 2001) (district court abused its discretion in refusing to conduct an evidentiary hearing on failure to investigate claim made under 28 U.S.C. § 2255, where the affidavits of trial counsel, defendant, and prospective alibi witnesses presented questions of fact as to whether counsel adequately assessed the potential testimony of these witnesses). Furthermore, Turner's affidavit is ambiguous as to whether Turner simply could not make an identification at the lineups or whether he believed Johnson was not the offender. Therefore, the trial court erred in summarily dismissing Johnson's post-conviction petition without an evidentiary hearing because Johnson was deprived of the opportunity "to explore

his trial counsel's reasons--if he had any--for failing to interview and call the witnesses [and] . . . the effect of [those witnesses'] testimony." *Hampton*, 347 F.3d at 235. Consequently, the Court orders that an evidentiary hearing take place on the issue of whether Johnson's trial counsel was constitutionally ineffective when his trial counsel failed to call Danny Turner as a witness at trial.

    b. **Failure to Call Johnson's Sister, Shirley Ann Rogers, as a Witness; to Question Johnson on Redirect Regarding His Phone Call from the Police Station; and to Request the Jury Be Instructed to Disregard the Prosecutor's Insinuation Concerning the Phone Call or to Request a Mistrial Due to the Insinuation**

Counsel's failure to call Shirley Rogers or to question Johnson on redirect regarding his conversation with Rogers, however, does not breed a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. Johnson desired to rebut the State's insinuation that he called his sister from the police station to tell her to destroy incriminating evidence before the State searched his apartment. However, Johnson was not arrested until eleven days after the murder, so regardless of what Johnson said to his sister, the jury could have found that Johnson had the time and opportunity to dispose of the evidence.

For the same reason, Johnson's trial counsel's failure to request that the judge instruct the jury to disregard the insinuations as to the phone conversation between Rogers and Johnson also would not have changed the result at trial.[5] Furthermore, requesting a mistrial would not have changed the result, and Johnson nowhere explains why he would have been entitled to a mistrial or why failing to request a mistrial would constitute a constitutional violation. Johnson filed a motion

---

[5] In addition, Johnson failed to raise this issue of his counsel's failure to request this jury instruction on direct appeal, and therefore it is procedurally defaulted.

13

to reconsider in the circuit court, and that was denied. Therefore, these claims fail under the second prong of *Strickland*.

### c. Failure to Object When the Prosecutor Argued Facts Not In Evidence

Next, Johnson provides no factual support for his claim that his trial counsel was ineffective for failing to object to the prosecutor arguing facts not in evidence and making remarks solely designed to inflame the jury. Neither the Court nor the State was directed to where the prosecutor argued facts not in evidence or what remarks were designed to inflame the jury. "A habeas petitioner must state specific facts fleshing out each ground for relief so that the District Court may tell from the face of the petition whether further habeas review is warranted." *U.S. ex rel. Santiago v. Welborn*, 97 C 2879, 2002 WL 31600051, at *12 (N.D. Ill. Nov. 18, 2002) (citing *Adams v. Armontrout*, 897 F.2d 332, 334 (8th Cir. 1990); Rule 2(c), Rules Governing Section 2254 Cases in the United States District Court (1982)). "A habeas corpus petition cannot stand on mere vague assertions and conclusions of a constitutional violation." *Santiago*, 2002 WL 31600051, at *12. Therefore, Johnson has failed to set forth an adequate basis to support this claim.

### 3. Ineffective Assistance of Appellate Counsel on Direct Appeal

Johnson also claims that his appellate counsel on direct appeal was ineffective in failing to raise the issue of the cumulative effect of the prosecutor's improper comments in closing arguments. However, his appellate counsel did raise, and the appellate court did consider, the effect of the individual allegations of prosecutorial misconduct, and the court found that only one comment was actually improper. This comment, however, was found to constitute harmless error. Since the comments were not improper by themselves (except for the one comment), they could not be improper cumulatively. Thus, raising this issue would not have resulted in a different outcome at

14

trial, failing the second prong under *Strickland*. 466 U.S. at 694. Furthermore, appellate counsel is under no constitutional obligation to raise every non-frivolous issue requested by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).

### 4. Ineffective Assistance of Appellate Counsel on *Batson* Remand

Johnson argues that his appellate counsel after the *Batson* remand was ineffective for failing to make the strongest possible argument in his opening brief, for failing to file a petition for rehearing, for failing to file a reply brief, and for failing to file a petition for leave to appeal. This argument also fails. As explained above, appellate counsel is not obligated to raise every conceivable argument on appeal which the trial record supports. *Barnes*, 463 U.S. at 751-52. Here, Johnson argues that he satisfies the *Strickland* test for ineffective assistance of appellate counsel because his appellate counsel failed to raise what Johnson considers to be the strongest cases in support of his *Batson* claims. Counsel did, however, file a brief citing several probative and persuasive cases on the *Batson* issue. Such behavior cannot be said to "fall below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "*Strickland* requires us to focus, not upon whether counsel could have done a better job, but upon whether counsel provided the assistance necessary to ensure the fundamental fairness of the proceeding whose result is being challenged. *Resnover v. Pearson*, 965 F.2d 1453, 1460 (7th Cir. 1992). As such, counsel's appellate brief did not constitute ineffective assistance of counsel.

In addition, appellate counsel's failure to file a reply brief or a petition for rehearing does not constitute ineffective assistance as counsel as that did not deprive Johnson of a fundamentally fair trial, and Johnson points to no case holding that this may constitute ineffective assistance of counsel. Although perhaps the appellate counsel could have done a better job, the appellate counsel did ensure fundamental fairness in the proceeding. Moreover, Johnson does not show that a petition for

15

rehearing would have been successful. Finally, Johnson's appellate counsel's failure to file a petition for leave to appeal to the Supreme Court did not prejudice Johnson because Johnson did file a petition for leave to appeal – *pro se*. The Supreme Court denied his petition, and there is no evidence that the petition would have been granted had it been filed by counsel instead. Thus, Johnson's appellate counsel was not constitutionally ineffective.

### III. Conclusion

For the above reasons, the Court will hold an evidentiary hearing on the issue of whether Johnson's trial counsel was ineffective for failing to interview or call Danny Turner as a witness at trial. The remainder of Johnson's § 2254 petition is DENIED.

IT IS SO ORDERED.

6/21/04
Dated

Judge William J. Hibbler
United States District Court